```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

JOHN P. FULTZ and               )
DEBORAH FULTZ,                  )
                                )
           Plaintiffs           )
                                )
      v.                        )   Case No. 2:08 cv 289
                                )
AHMED OSMAN AHMED; XTRA LEASE   )
LLC; T-J TRANSPORT, INC.;       )
TRAILMOBILE CORPORATION;        )
TRAILMOBILE PARTS & SERVICE     )
CORPORATION;                    )
                                )
           Defendants           )
****************************** )
XTRA LEASE LLC                  )
                                )
           Cross-Claimant       )
                                )
      v.                        )
                                )
T-J TRANSPORT, INC.;            )
TRAILMOBILE CORPORATION; and    )
TRAILMOBILE PARTS & SERVICE     )
CORPORATION                     )
                                )
           Cross-Defendants     )
******************************* )
XTRA LEASE LLC                  )
                                )
           Third Party Plaintiff)
                                )
      v.                        )
                                )
LINCOLN GENERAL INSURANCE       )
COMPANY,                        )
                                )
           Third Party Defendant)
```

## OPINION AND ORDER

This matter is before the court on the Motion to Dismiss the Cross-Claim of Xtra Lease, LLC [DE 56] filed by the defendants, Trailmobile Corporation and Trailmobile Parts & Service Corporation, on October 28, 2009. For the following reasons, the Motion to Dismiss the Cross-Claim is **GRANTED**.

## Background

This case arises from an accident between two trucks traveling eastbound on Interstate 80 near Portage, Indiana, on November 15, 2006. At that time, Ahmed Osman Ahmed was employed by the defendant, T-J Transport, Inc., which was the registered owner of the semi-tractor. Another defendant, Xtra Lease, LLC, was the registered owner of the Trailmobile trailer being pulled by the semi-tractor. At the time of the accident, the right rear dual wheels separated from the trailer of the vehicle driven by Ahmed. The plaintiff, John P. Fultz, was operating a semi-truck on the same stretch of road and struck the wheel assembly from the defendants' trailer that had fallen off and remained in the roadway. After striking the wheel assembly, Fultz's semi-tractor entered the median and rolled on its side, and Fultz sustained injuries.

In the complaint filed on October 9, 2008, Fultz states five counts against the various defendants: Count One against Ahmed for negligence in operating his semi-tractor trailer; Count Two against T-J Transport, Inc., for negligence in maintaining and inspecting the trailer, negligence in training its employee, Ahmed, and negligence in entrusting Ahmed with its semi-tractor; Count III [sic] against Xtra Lease, LLC, for negligence in maintaining the trailer and as the principle responsible for the negligent actions of Ahmed and T-J Transport, Inc.; Count IV [sic] against Trailmobile Corporation and Trailmobile Parts & Service Corporation for failing to exercise reasonable care in

the design and manufacture of the trailer; Count V [sic] against Trailmobile Corporation and Trailmobile Parts & Service Corporation for product liability for manufacturing a defective product; and Count VI [sic] against all defendants as to the loss of consortium sustained by Fultz's wife, Deborah, based on the prior claims.

In its Amended Answer [DE 44] filed on September 9, 2009, Xtra Lease, LLC, asserts a Cross Claim against Trailmobile Corporation and Trailmobile Parts & Service Corporation. The claim cites and includes as an exhibit the Equipment Purchase Order ("EPO") agreed to by XTRA, Inc., c/o XTRA Lease, and Trailmobile, Inc., in which XTRA agrees to purchase from Trailmobile, Inc., the trailer involved in the accident. The EPO includes as Part II a form Purchase Order outlining "General Terms and Conditions" to which the parties agree with modifications and amendments specifically noted and signed in Part I. Paragraph 11 of the General Terms and Conditions states: "This Purchase Order shall be governed by the laws of The Commonwealth of Massachusetts, United States of America, including specifically the Uniform Commercial Code." (DE 44-6, p. 10) Paragraph 6 of the General Terms and Conditions is entitled "Product Liability" and states:

> Seller agrees to indemnify XTRA, its agents, officers, employees and customers, successors and assignees, and to hold them harmless from and against any and all loss, liability, and expense, arising out of the death of or injury to any person or persons or damage to property resulting from any defect or fail-

>       ures of design, workmanship, materials, or
>       performance, either latent or patent, in the
>       equipment purchased under this Purchase Or-
>       der. Seller shall, at its expense, defend
>       all such actions, but XTRA shall have the
>       right to be represented therein by counsel at
>       its own expense. XTRA will notify Seller
>       promptly in writing after any notice of such
>       claim is received and will give Seller rea-
>       sonable assistance in the defence [sic] of
>       such claim, at Seller's expense.
>
>       (DE 44-6, pp. 9-10)

However, this paragraph is "amended in its entirety as follows" in Part I:

>       Seller agrees to indemnify XTRA, its agents,
>       officers, employees, successors and assign-
>       ees, and to hold them harmless from and
>       against any and all loss, liability, and
>       expense, arising out of the death of or in-
>       jury to any person or persons or damage to
>       property resulting from any defect in the
>       design, workmanship, materials, or perfor-
>       mance of the equipment purchased under this
>       Purchase Order. In no event shall Seller be
>       responsible for the negligence of the indem-
>       nified parties. XTRA will notify Seller in
>       writing within 60 days of receipt of first
>       notice of any claim which may be subject to
>       this paragraph. In the event that seller
>       accepts a claim for indemnity under this
>       provision, XTRA reserves the right to asso-
>       ciate, at its own expense, counsel of its
>       choice and will cooperate fully with Seller
>       in the defense of any such claim.
>
>       (DE 44-6, pp. 4-5)

In the Motion to Dismiss the Cross-Claim, Trailmobile argues that: (1) the EPO on which the claim for indemnity is based is a contract between Xtra, Inc. and Trailmobile, Inc., two entities which are not named parties to this lawsuit; (2) the EPO includes a condition precedent notice requirement which was not satisfied

and therefore precludes the indemnity cross-claim; and (3) the EPO explicitly precludes indemnity for acts of negligence by the indemnified parties and the claims in this case against Xtra Lease, LLC, are based solely upon negligence.

## Discussion

Federal Rule of Civil Procedure 12(b)(6) allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" to show that a pleader is entitled to relief. The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." ***Ashcroft v. Iqbal***, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Iqbal***, 129 S.Ct. at 1949 (*quoting* ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This pleading standard applies to all civil matters. ***Iqbal***, 129 S.Ct. at 1953.

The decision in ***Iqbal*** discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by ***Twombly***.

*See Twombly,* 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint: "[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Iqbal*, 129 S.Ct. at 1949. Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss: if the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Iqbal*, 129 S.Ct. at 1949-50. *See also Brown v. JP Morgan Chase Bank*, 2009 WL 1761101, *1 (7th Cir. June 23, 2009)(defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability).

The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 129 S.Ct. at 1949-50. Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Maxie v. Wal-Mart Store*, 2009 WL 1766686, *2 (N.D. Ind. June 19, 2009)(same); *Banks v. Montgomery*, 2009 WL 1657465, *1 (N.D. Ind. June 11, 2009)(same).

Before addressing the motion to dismiss, the choice of law must be discussed. A federal court sitting in diversity applies federal procedural law and the substantive law of the state in which it sits. *Charter Oak Fire Insurance Company v. Hedeen & Companies*, 280 F.3d 730, 735 (7th Cir. 2002). Here, the court must apply Indiana substantive law to the case. This, in turn, requires the application of Indiana choice of law doctrine. *Nickles v. Heleine*, 460 F.Supp.2d 886, 888 (S.D. Ind. 2005). Indiana law respects the parties' choice of law clause contained in the EPO. Otherwise, Indiana follows the Restatement (Second) of Conflict of Laws and applies the law of the forum with the most intimate contacts to the transaction. *Travelers Indemnity Company v. Summit Corp. of America*, 715 N.E.2d 926, 931 (Ind. App. 1999).

A choice of law clause in a contract controls, relieving the court of the obligation to explore the quality or quantity of contacts between the parties. See *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 1993 WL 723500, *4 (S.D. Ind. 1993)("In any action based on an alleged contract *in which the parties have not specified the law that will govern their relationship*, applicable law is determined by a 'most intimate contact' or 'most significant relationship' test.")(emphasis added); *Sheldon v. Munford, Inc.*, 660 F.Supp. 130, 134 (N.D. Ind. 1987)("[B]efore applying the intimate-contacts test, the court must determine whether the parties to the present contract have already chosen which state's law is to apply."). Indiana's

7

policy "honors the parties' choice of law in an effort to give the effect to their manifest intent . . . ." *Sheldon*, 660 F.Supp. at 130 (*citing South Bend Consumers Club v. United Consumers Club*, 572 F.Supp. 209, 212 (N.D. Ind. 1983). Here, the EPO's choice of law clause is plain and unambiguous. Honoring the parties' choice of law when they entered into the EPO, this court will apply the law of Massachusetts to the indemnity claim.

Although Trailmobile has made three arguments for the dismissal of the Cross Claim, the court only will address the third, that Trailmobile is not required to indemnify Xtra for its own negligence. "Indemnity provisions 'are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.'" *Massachusetts Port Authority v. Johnson Controls, Inc.*, 54 Mass. App. 541, 544, 766 N.E.2d 542, 544 (2002)(*quoting Urban Inv. & Dev. Co. v. Turner Constr. Co.*, 35 Mass. App. 100, 107, 616 N.E.2d 829 (1993)). "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 222, 418 N.E.2d 597 (1981). *See also Post v. Belmont Country Club, Inc.*, 60 Mass. App. 645, 651, 805 N.E.2d 63, 69 (quoting same). This rule recognizes that "[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used

against the background of other indicia of the parties' intention." *Shea*, 383 Mass. at 222-23 (*quoting* *United States v. Seckinger,* 397 U.S. 203, 213 n.17, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). In interpreting contracts, the court construes all words that are plain and free from ambiguity. *Post v. Belmont Country Club, Inc.*, 60 Mass. App. 645, 651, 805 N.E.2d 63 (2004). Contract language is ambiguous where the "agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken." *Post*, 60 Mass. App. at 652 (*quoting* *Fashion House, Inc. v. Kmart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989)). "However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." *Jefferson Ins. Co. of N.Y. v. Holyoke*, 23 Mass. App. 472, 475, 503 N.E.2d 474 (1987).

In the *Post* case, the estate of a golf club member who died in an accident while driving his golf cart along a temporary path on a club course brought suit for wrongful death and for conscious pain and suffering. The club counter-claimed for indemnity under a clause in the club's membership handbook that provided indemnity for any personal injury or property damage caused by a person renting or driving a cart, "including without limitation, injury to him/herself and damage to the cart," and indemnification to the club for all loss, claims and expenses from use of the cart. The estate of the deceased golfer settled its claims, then the club filed a summary judgment motion for its

9

indemnification claim which was granted by the trial court and affirmed on appeal. Even though the indemnity agreement was contained in the club members' handbook among many other rules, regulations, and provisions, the Massachusetts Appellate Court found that by becoming a member, Post had entered a contractual obligation and freely accepted the terms of the indemnity agreement. 60 Mass. App. at 647.

In *Post*, the Massachusetts courts found that the club member freely agreed to the indemnity clause even though it was buried in the member's handbook. Here, the parties are two business entities freely negotiating a sale of goods which included an indemnification clause as part of their contract. See *Cheschi v. Boston Edison Co.*, 39 Mass. App. 133, 141, 654 N.E.2d 48, 53 (1995)(discussing application of traditional contract principles to indemnification clause negotiated by two sophisticated business concerns). The terms of the indemnity clause, including the straightforward language of the limitation, "[i]n no event shall [Trailmobile] be responsible for the negligence of [Xtra]", establish contractual indemnity with a simple limitation. This indemnity clause requires Trailmobile to indemnify Xtra for "any and all loss, liability, and expense, arising out of the death of or injury to any person or persons or damage to property resulting from any defect in the design, workmanship, materials, or performance of the equipment purchased" from Trailmobile. Like in *Post*, the indemnity clause speaks clearly the parties' intent. However, the Fultzs' Complaint does not allege a defect in

design, workmanship, materials, or performance of the Trailmobile trailer against Xtra, allegations which would be indemnified under the EPO.  Rather, the Fultzs' Complaint alleges negligence against Xtra in its use of the trailer.  It is impossible for Xtra to be liable for anything other than its own negligence under this Complaint.  Therefore, the cross claim for indemnity fails as a matter of law for failing to state a claim upon which relief may be granted.

This dismissal is not based upon a threadbare recitation of facts which fail to support the cross claim, but occurs under the second *Iqbal* standard, the implausibility of the claim for relief made by Xtra.  Indemnity for a negligence claim is forbidden by Section 6 of the EPO, a clause which was fairly negotiated between the two business entities involved.  Because Count III in the Fultzs' Complaint asserts only negligence claims against Xtra Lease, LLC, and Count VI asserts loss of consortium based on the previous five claims, there is no basis for the cross claim for indemnity from Trailmobile because only negligence claims have been asserted against Xtra.  Therefore, the Motion to Dismiss is **GRANTED**, and the Cross Claim of Xtra Lease, LLC, against Trailmobile Corporation and Trailmobile Parts & Service Corporation is **DISMISSED WITH PREJUDICE.**

_____

For the reasons stated above, the Motion to Dismiss the Cross-Claim of Xtra Lease, LLC [DE 56] filed by the defendants, Trailmobile Corporation and Trailmobile Parts & Service Corpora-

tion, on October 28, 2009, is **GRANTED**.  The Cross Claim of Xtra Lease, LLC, against Trailmobile Corporation and Trailmobile Parts & Service Corporation is **DISMISSED WITH PREJUDICE.**

ENTERED this 9th day of June, 2010

```
                        s/ ANDREW P. RODOVICH
                           United States Magistrate Judge
```